1   Gail Migdal Title (SBN 049023)
    Zia F. Modabber (SBN 137388)
2   Joel R. Weiner (SBN 139446)
    Melissa S. Glousman (SBN 252395)
3   **KATTEN MUCHIN ROSENMAN LLP**
    2029 Century Park East, Suite 2600
4   Los Angeles, CA 90067-3012
    Telephone:  310.788.4400
5   Facsimile:  310.788.4471

6   Gail.Title@kattenlaw.com
    Zia.Modabber@kattenlaw.com
7   Joel.Weiner@kattenlaw.com
    Melissa.Glousman@kattenlaw.com
8
    Attorneys for defendants NBC UNIVERSAL, INC.; 3 BALL PRODUCTIONS, INC.;
9   REVEILLE, LLC; BEN SILVERMAN; 25/7 PRODUCTIONS, LLP

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  LIVIA MILANO, an individual,            )   **Case No.  CV 06-3237 GAF (FFMx)**
                                            )
14              Plaintiff                   )   NOTICE OF MOTION AND MOTION
                                            )   FOR SUMMARY JUDGMENT, OR, IN
15         v.                               )   THE ALTERNATIVE, PARTIAL
                                            )   SUMMARY JUDGMENT;
16  NBC UNIVERSAL, INC., a Delaware         )   MEMORANDUM OF POINTS AND
    corporation, doing business as NBC      )   AUTHORITIES; AND
17  UNIVERSAL TELEVISION                    )   DECLARATIONS IN SUPPORT
    DISTRIBUTION; NBC UNIVERSAL             )   THEREOF
18  TELEVISION STUDIO, an entity of         )
    unknown origin; 3 BALL                  )   Date: June 9, 2008
19  PRODUCTIONS, INC., a California         )   Time: 9:30 a.m.
    corporation; REVEILLE, LLC, a           )   Place: Courtroom 740, Roybal Bldg.
20  Delaware limited liability company;     )
    BEN SILVERMAN, an individual; 25/7      )   Complaint Filed:  May 25, 2006
21  PRODUCTIONS, LLP, a Delaware            )   Trial Date: October 21, 2008
    limited liability company; DANIEL       )
22  TIBBETS, an individual; TWENTIETH       )
    TELEVISION, INC., a Delaware            )   [Filed Concurrently Herewith:
23  corporation; SHINE LIMITED, an entity   )   1. Declaration of David Ginsburg;
    of unknown origin; ANDREW HILL, an      )   2. Declarations of NBC Defendants;
24  individual, and DOES 1 through 50,      )   3. Declaration of Michelle Van Kempen;
    inclusive,                              )   4. Declaration of Melissa S. Glousman;
25                                          )   5. Request for Judicial Notice;
                Defendants.                 )   6. Separate Statement of Uncontroverted Facts and
26                                          )      Conclusions of Law;
                                            )   7. Proposed Judgment;
27                                          )   8. Ex Parte Application for an Order Sealing
                                            )      Sealing Confidential Information.]
28

---

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2008, at 9:30 a.m., in Courtroom 740 of the Edward R. Roybal Federal Building and Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, the Honorable Gary Allen Feess, United States District Court Judge presiding, defendants NBC UNIVERSAL, INC.; 3 BALL PRODUCTIONS, INC.; REVEILLE, LLC; BEN SILVERMAN and 25/7 PRODUCTIONS, LLP (collectively, the "NBC Defendants") will, and hereby do, move for summary judgment or, in the alternative, for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, with respect to the Second Amended Complaint filed by plaintiff Livia Milano.

The NBC Defendants move for summary judgment on the ground that there is no genuine issue of material fact, and that the NBC Defendants are entitled to judgment as a matter of law, on the sole claim for relief asserted against the NBC Defendants for copyright infringement, because, without limitation:

(1)   Plaintiff does not raise a genuine issue of material fact that the television series *The Biggest Loser* ("*Biggest*") and plaintiff's copyrighted material entitled "From Fat to Phat" ("Phat") are substantially similar under the Ninth Circuit's extrinsic test applied to claims of copyright infringement;

(2)   Plaintiff does not raise a genuine issue of material fact that any of the NBC Defendants had access to "Phat" in connection with the creation of *Biggest*;

(3)   Plaintiff does not raise a genuine issue of material fact to rebut the evidence presented by the NBC Defendants that *Biggest* was created independently, without any copying from "Phat."

In the alternative, the NBC Defendants seek partial summary judgment on the ground that there is no genuine issue of material fact and defendants are entitled to a ruling in their favor as to the copyright infringement claim; each of the facts and conclusions of law contained in the concurrently filed Statement of Uncontroverted

31419715_17

1  Facts and Conclusions of Law ("SUF"); each of the three issues identified above; and

2  plaintiff's claims for statutory damages and attorney's fees under the Copyright Act.

3      This Motion is made following the conference of counsel pursuant to Local

4  Rule 7.4.1 which took place on several occasions throughout the pendency of this

5  action, most recently on April 24, 2008.  This Motion and the related papers are being

6  personally served on plaintiff's counsel.

7      This Motion is based upon this Notice of Motion, the attached Memorandum of

8  Points and Authorities; the concurrently filed Declarations of David Ginsburg, Ben

9  Silverman, David Broome, Mark Koops, JD Roth, Daniel Ho, Michelle Van Kempen,

10  and Melissa Glousman, along with Discovery Responses, Deposition Excerpts and

11  Exhibits attached thereto; the concurrently filed Request for Judicial Notice; the

12  concurrently filed Joint Compendium of Reality Television Programs; the

13  concurrently filed Statement Of Uncontroverted Facts and Conclusions of Law; the

14  declarations and evidence concurrently filed in support of the motion for summary

15  judgment of defendants Daniel Tibbets, Twentieth Television, Inc., Shine, Ltd., and

16  Andrew Hill, including but not limited to the declaration of Carol Tenney in Support

17  of Twentieth Television Defendants' Motion for Summary Judgment; the pleadings

18  and other documents on file with the Court; such other and further matters of which

19  this Court must or may take judicial notice; any argument that may be heard by the

20  Court at the time of the hearing; and any other matters that may be considered by the

21  Court.

22  Dated:  May 14, 2008                    KATTEN MUCHIN ROSENMAN LLP

23

24

25  By: _____
          Joel R. Weiner

26            Attorneys for Defendants NBC
          UNIVERSAL, INC.; 3 BALL

27            PRODUCTIONS, INC.; REVEILLE,
          LLC; BEN SILVERMAN and

28            REVEILLE PRODUCTIONS, LLP

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

2

31419715_17

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................1

II.  STATEMENT OF UNDISPUTED FACTS.........................................3

    A.   Plaintiff's Second Amended Complaint.........................................3

    B.   The Saturation of the Television Market with Weight Loss
Competitions and Reality Television Elimination and Self-
Improvement Shows................................................................4

    C.   *The Biggest Loser* Television Series ...........................................7

        1.   The Creation of The Biggest Loser.....................................7

        2.   Summary of *The Biggest Loser* Series...............................8

    D.   Plaintiff's "From Fat to Phat" Treatment...................................10

        1.   The Creation of "From Fat to Phat"..................................10

        2.   Summary of Plaintiff's "From Fat to Phat" Treatment .................11

    E.   The Creators of *The Biggest Loser* Did Not Copy From, See or
Have Access to Plaintiff's Treatment .......................................13

III.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS AS A
MATTER OF LAW...............................................................14

    A.   To Prevail on a Claim of Copyright Infringement, a Plaintiff Must
Demonstrate "(1) ownership of a valid copyright, and (2) copying
of constituent elements of the work that are original." ...........................14

    B.   Plaintiff Does Not Raise A Genuine Issue of "Access" To Her
Treatment By Anyone Involved in the Creation of *The Biggest
Loser*. ..........................................................................15

    C.   Plaintiff Cannot Show that *The Biggest Loser* Television Series is
"Substantially Similar" to Her "Fat to Phat" Treatment. .........................17

        1.   Summary Judgment Is Required Where Two Works Are Not
Substantially Similar Under The Ninth Circuit Extrinsic
Test...............................................................18

i

31419715_17

2.   When Comparing Works, the Court Must Filter Out General Plot Ideas, Stock Scenes (*Scenes a Faire*) and Unoriginal Elements in the Genre. ...................................................18

3.   Plaintiff Has Failed to Identify *Any* Protectible Similarities Between her Treatment and *The Biggest Loser*. ...........................22

D.   The NBC Defendants Have Produced Uncontroverted Evidence Showing That *The Biggest Loser* Was Independently Created, Without Reference to Plaintiff's "Phat" Treatment. .................................24

E.   Plaintiffs' Failure To Timely Register Her Work Precludes Her From Seeking Statutory Damages Or Attorney's Fees. ...........................25

IV.   CONCLUSION. .................................................................................25

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

ii

# TABLE OF AUTHORITIES

**Page**

**Cases**

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)......................................................................15

Apple Computer Inc. v. Microsoft Corp.,
   35 F. 3d 1435 (9th Cir. 1994) ................................................19, 22

Benson v. Coca-Cola Co.,
   795 F. 2d 973 (11th Cir. 1986) ......................................2, 15, 24

Berkic v. Crichton,
   761 F. 2d 1289 (9th Cir. 1985) ..........................1, 18, 19, 21

Bethea v. Burnett,
   2005 WL 1720631 (C.D. Cal. 2005) .............................passim

Cavalier v. Random House, Inc.,
   297 F.3d 815 (9th Cir. 2002) ................................................19

Celotex Corp. v. Catrett,
   477 U.S. 317, 106 S. Ct. 2548 (1986) ................................15

Data East USA, Inc. v. Epyx, Inc.,
   862 F.2d 204 (9th Cir. 1988)................................................22

Dick Clark Co. v. Alan Landsburg Productions, Inc.,
   1985 WL 1077775 (C.D. Cal. 1985) .....................................21

Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,
   109 F3d 394 (9th Cir. 1997) ................................................19

Eaton v. National Broadcasting Co.,
   972 F. Supp. 1019 (E.D. Va 1997) ......................................17

Feist Pubs., Inc. v. Rural Tel. Serv. Co.,
   499 U.S. 340 (1991).............................................................19

Ferguson v. NBC, Inc.,
   584 F.2d 111 (5th Cir. 1978) ..........................................16, 17

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iii

31419715_17

*Funky Films, Inc. v. Time Warner,*
    462 F. 3d 1072 (9th Cir. 2006)..................................................................passim

*Hogan v. DC Comics,*
    48 F. Supp. 2d 298 (S.D.N.Y. 1999)..............................................................23

*Idema v. Dreamworks, Inc.,*
    162 F. Supp. 2d 1129 (C.D. Cal. 2001)............................................................19

*Jason v. Fonda,*
    526 F. Supp. 774 (C.D. Cal. 1981)................................................................17

*Kouf v. Walt Disney Pictures & Television,*
    16 F. 3d 1042 (9th Cir. 1994)......................................................................19

*Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984)................................................................14, 17

*McGauhey v. Twentieth Century Fox Television,*
    12 F. 3d 62 (5th Cir. 1994)........................................................................17

*Meta-Film Assoc., Inc. v. MCA, Inc.,*
    586 F. Supp. 1346 (C.D. Cal. 1984)..........................................................passim

*Narell v. Freeman,*
    872 F. 2d 907 (9th Cir. 1989)....................................................................18

*Novak v. NBC, Inc.,*
    752 F. Supp. 164 (S.D.N.Y. 1990)................................................................20

*Olson v. NBC,*
    855 F.2d 1446 (9th Cir. 1988)................................................................21, 23

*Rice v. Fox Broad. Co.,*
    330 F. 3d 1170 (9th Cir. 2003)..........................................................20, 21, 23

*Rice v. Fox Broadcasting,*
    148 F. Supp. 2d 1029, 1052 (C.D. Cal. 2001)..................................................21

*See v. Durang,*
    711 F. 2d 141 (9th Cir. 1983)....................................................................21

*Selle v. Gibb,*
    741 F. 2d 896 (7th Cir. 1984)................................................................15, 24

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

iv

31419715_17

Stein v. Mazer,
    204 F. 2d 472 (4th Cir. 1953) ....................................................................15, 24

Summers v. Teichert & Son, Inc.,
    127 F. 3d 1150 (9th Cir. 1997) ..........................................................................15

Three Boys Music v. Bolton,
    212 F. 3d 477 (9th Cir. 2000) .................................................................15, 16, 24

Tisi v. Patrick,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000) ..................................................................17

Towler v. Sayles,
    76 F. 3d 579 (4th Cir. 1996) ........................................................................16, 17

Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.,
    64 F. Supp. 2d 352 (S.D. NY 1999) ...................................................................25

Williams v. Crichton,
    84 F.3d 581 (9th Cir. 1996) ..............................................................................21

Woods v. Pro Video Productions, Inc.,
    447 F. Supp. 2d 1022 (D. Minn. 2006) ..............................................................20

Zella v. E.Q. Scripps Co.,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007)..........................................................passim

**Statutes**

17 U.S.C. § 102 ...............................................................................................19

17 U.S.C. § 412 ...............................................................................................25

Federal Rules of Civil Procedure, Rule 56 .................................................15

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Livia Milano's sole claim for relief against the NBC Defendants -- that the television series *The Biggest Loser* ("*Biggest*") allegedly infringes her copyright in an unpublished treatment for a television weight loss competition entitled "From Fat to Phat" ("Phat") -- lacks any factual or legal support.

Plaintiff's copyright action is fatally flawed in that none of plaintiff's alleged similarities are protected by the Copyright Act. Essentially, plaintiff alleges that "Phat" and *Biggest* are both reality television series in which overweight individuals compete to lose the most weight for a prize; and the contestants diet, exercise with a fitness trainer, weigh in and face temptations, rewards and emotional moments of success and failure. However, the same stock elements are present in virtually all weight loss competition television programs, including many that pre-date both "Phat" and *Biggest*, and the law is clear that similarity of such general ideas and *scenes a faire* cannot form the basis of a copyright claim. *See*, *e.g.*, Berkic v. Crichton, 761 F. 2d 1289, 1293 (9th Cir. 1985) ("No one can own the basic idea for a story. General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind.").

Plaintiff's copyright action is also fatally flawed in that the works are not substantially similar in their protected expression. *Biggest* is a fully realized television series with specific events, real and unique participants, unscripted and unique dialogue, and unscripted and real emotional reactions to events, all of which are filmed and edited into concretely expressive stories. In contrast, "Phat" is a bare-bones three-page treatment of general ideas which was never developed into protectible expression. Moreover, to the extent any elements in plaintiff's treatment contain any expression, those expressive elements are entirely absent from *Biggest*. Thus, there is no basis on which the Court could find substantial similarity in the works' protected expression. Funky Films, Inc. v. Time Warner, 462 F. 3d 1072,

1   1077 (9th Cir. 2006) (summary judgment for defendant affirmed where television

2   series *Six Feet Under* was not substantially similar to plaintiffs' screenplay).

3         Plaintiff's copyright action is further fatally flawed as there is no evidence that

4   any NBC Defendants had access to "Phat" before the creation of *Biggest*, much less

5   that they actually saw or copied it. Plaintiff does not allege that she submitted "Phat"

6   to any of the NBC Defendants. Her claim of access rests on utter speculation.

7   Further, plaintiff's speculation is refuted by defendants' evidence that no such access

8   occurred. Without concrete evidence of access, plaintiff's claim fails on summary

9   judgment. Meta-Film Assoc., Inc. v. MCA, Inc., 586 F. Supp. 1346, 1355 (C.D. Cal.

10  1984) ('a bare possibility' of access is insufficient to avoid summary judgment).

11        Plaintiff's copyright claim is also fatally flawed in that the NBC Defendants

12  have provided unrefuted evidence that the NBC Defendants created *Biggest* with no

13  reference to "Phat." In their deposition testimony and declarations and through the

14  documents they produced, the heads of Reveille, 25/7 Productions, and 3 Ball

15  Productions have set forth in great detail how they came up with and developed the

16  various elements that comprise *Biggest* entirely independently of Plaintiff. Plaintiff

17  has no contrary evidence. Thus, summary judgment is required. Benson v. Coca-

18  Cola Co., 795 F. 2d 973, 975 (11th Cir. 1986) (uncontradicted evidence of

19  independent creation fully negates any claim of copyright infringement, even where

20  there is access and similarity).

21        Courts in this district addressing similar claims regarding reality televisions

22  programs in analogous circumstances have found for defendants. Bethea v. Burnett,

23  2005 WL 1720631 (C.D. Cal. 2005) (summary judgment); Zella v. E.W. Scripps Co.,

24  529 F. Supp. 2d 1124 (C.D. Cal. 2007) (dismissal). This Court should do likewise and

25  grant summary judgment for each of the NBC Defendants.

26

27

28

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

## II.  STATEMENT OF UNDISPUTED FACTS

### A.  Plaintiff's Second Amended Complaint

The complaint asserts claims for breach of implied contract, breach of confidence and copyright infringement.  The sole claim asserted against the NBC Defendants is the third claim for copyright infringement.  (Second Amended Complaint ("SAC") ¶¶ 30-36.)[1]  Plaintiff alleges that the television series *Biggest* was copied from plaintiff's unpublished treatment "Phat."[2]  (SAC ¶¶ 30-36.)

Much of plaintiff's complaint has nothing to do with the NBC Defendants.  Plaintiff alleges that she created her "Phat" treatment while working as an administrative assistant at Twentieth Television, Inc.; that she pitched her ideas to her boss at Twentieth, Daniel Tibbets, Vice President of Programming and Development; that Tibbets relayed the ideas to others at Twentieth; and that, at the suggestion of Tibbets and Twentieth, plaintiff began working on the treatment with defendant Andrew Hill of defendant Shine.[3]  (SAC ¶¶ 19-21, 25-27.)  Based on these allegations, plaintiff alleges that she entered into an implied contract with and/or submitted her ideas in confidence to the Twentieth Defendants.  None of these claims or allegations involve the NBC Defendants.

Importantly, plaintiff does not allege that she pitched or submitted "Phat" to any of the NBC Defendants and in fact admits that she never pitched or submitted "Phat" to them.  (SUF Nos. 72-79.).  Nor does she allege that her treatment was published or

---

[1]  The first and second claims for relief are asserted against defendants Daniel Tibbets; Twentieth Television, Inc. ("Twentieth"); Shine Limited ("Shine")' and Andrew Hill (collectively, the "Twentieth Defendants").

[2]  For purposes of this motion, the NBC Defendants will refer to plaintiff's "Phat" materials as a "treatment" as she does in the SAC, though the materials are more accurately described as general ideas for a reality television weight loss competition.

[3]  Plaintiff alleges that she left her job at Twentieth after reporting instances of sexual harassment by Tibbets.  (SAC ¶ 27.)  She settled an employment lawsuit against Twentieth and Tibbets for an undisclosed sum.

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1  widely disseminated. To the contrary, she alleges that she disclosed her unpublished

2  treatment in confidence only to the Twentieth Defendants. (SAC ¶ 25-26.)

3         The sole allegation in the complaint purporting to connect plaintiff's treatment

4  to the NBC Defendants -- a vague allegation "on information and belief" that Tibbets

5  had "a financial interest in 3 Ball Productions" (SAC ¶ 33) and, thus, hypothetically

6  might have disclosed plaintiff's treatment to 3 Ball -- is unsupported by any evidence

7  and is thoroughly refuted by corporate records of 3 Ball and deposition testimony.

8  (SUF Nos. 93-96, 99.)

9         The other factual allegation specific to the NBC Defendants is plaintiff's

10  assertion that her "Phat" treatment and *Biggest* share "similarities in themes, plot,

11  stories, characters and ideas." (SAC ¶ 36.) However, plaintiff's "treatment" consists

12  merely of a few pages of generic ideas for a reality television weight loss competition.

13  Plaintiff never fleshed out these general ideas and never generated any further

14  expression of her ideas. Moreover, the similarities identified by plaintiff -- e.g.,

15  competing to lose the most weight with diet and exercise, weigh-ins, "before and

16  after" photos, temptations, rewards, eliminations, prizes and shared successes and

17  failures (SAC ¶ 36) -- are merely general ideas and stock elements generic to weight

18  loss competition shows that are not protected by copyright law and cannot possibly

19  support a claim of copyright infringement, as discussed in detail below.

## B. The Saturation of the Television Market with Weight Loss Competitions and Reality Television Elimination and Self-Improvement Shows

22         Indisputably, the concept of a reality television weight loss competition did not

23  originate with plaintiff. In his expert report (the "Expert Report"), David Ginsburg[4]

24  details six such television programs that aired before plaintiff wrote her "Phat"

25  treatment (two of which aired on NBC). These programs contain many of the same

---

[4]  Defendants' expert, David Ginsburg, is Executive Director of the UCLA School of Law's Entertainment and Media Law and Policy Program, and an experienced television producer and entertainment attorney, as detailed in his declaration.

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

stock ideas common to a weight-loss competition that appear in plaintiff's later-written treatment:[5]

(1) **"The Big Diet,"** a weight loss competition in which contestants live together under constant cameras for thirteen weeks of diet, exercise, temptations, rewards, photographs, celebrity guests, on-screen weekly weigh-ins, and weekly eliminations, with the winner awarded a prize. (SUF Nos. 4-6, 106.)

(2) **"The Discovery Health Body Challenge,"** a diet and fitness competition in which contestants' weight, body measurements and fat percentages are tracked. The show includes the customary rituals of an initial "before" photograph, on-screen weigh-ins, nutritional tips and a prize to the winner. (SUF No. 110.)

(3) **"Get Fit Today,"** an eight-week weight loss competition feature story on NBC's Today Show, in which contestants were grouped into teams and guided by a dietician, exercise coach and fitness experts, and where the team that lost the most won a prize. Each week, the contestants were weighed in, measured, and ranked by aggregate loss. Diet and exercise tips were provided to the audience. (SUF No. 108.)

(4) NBC's **"Dateline Diet Challenge,"** involving contestants competing to lose weight in anticipation of their 25th high school reunion. Each followed one of six diet programs: Atkins, Weight Watchers, Slim-Fast, a personal diet trainer, hypnosis, and "extreme" exercise. Contestants were individually weighed on-screen. (SUF No. 109.)

(5) **"Dr. Phil's Weight Loss Challenge."** Citing the "runaway" national obesity epidemic, Dr. Phil solicited participants in a competitive weight loss program to be featured periodically on his show. Contestants were sequestered in a Los Angeles mansion for an elimination period where they were under 24-hour

---

[5]   Copies of the relevant DVDs, tapes, treatments and other supporting information are attached to the Joint Compendium of Reality Television Programs ("Compendium").

31419715_17

1   camera observation.  The show included the stock "before" photographs; revealing

2   each contestant's beginning weight; tempting snacks; rewards; a personal trainer;

3   mutual bonding; and private interviews regarding their hopes and fears.  (SUF No.

4   111.)

5          (6)  **"Fat Chance,"** where families competed to lose the most aggregate

6   weight, guided by a diet nurse and fitness coach.  Each episode began and ended with

7   an individual and aggregate weigh-in.  The winning family won a prize.  (SUF Nos. 9,

8   10, 107.)

9          An internet search by Ginsburg revealed additional weight-loss competitions,

10  including at least two other television shows, *Taking It Off* and *Celebrity Fit Club.*

11  (SUF No. 134.)  These programs also preceded plaintiff's "Phat" treatment and

12  included the stock structural elements of competition, teams, public weigh-ins, fitness

13  trainers, personal stories and conflicts.  (Expert Report, p. 3.; SUF No. 134.) [6]

14         In addition to weight loss shows, there is an established body of other reality

15  shows that include competition, teams and/or eliminations, in combination with the

16  motivation of interim rewards, personal bonding and conflicts, and a grand prize for

17  the winner. Such shows include *Survivor*, *Big Brother*, *The Apprentice*, *The Bachelor,*

18  *The Bachelorette, Average Joe, American Idol,* and *Fear Factor*, all of which

19  preceded plaintiff's treatment.  (SUF Nos. 117-126, 134.)  There are also numerous

20  self-improvement and makeover shows that preceded plaintiff's treatment, such as

21  *The Swan* and *Queer Eye for the Straight Guy*, *Mission: Makeover*.  (SUF Nos. 112-

22  114.)

23         In sum, there is a large body of weight loss competition and other elimination

24  and self-improvement reality television programming that preceded plaintiff's "Phat"

25

26

27  [6]   Another reality weight loss competition television program that post-dates
    plaintiff's treatment and contains similar elements is *Fat Actress* (Kirstie Alley has her
28  life taped for the public to track her weight loss).  (SUF No. 127.)

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    treatment that have common elements typical of, and effectively required for,

2    programs in this genre.

### C. *The Biggest Loser* Television Series

####    1.    The Creation of The Biggest Loser

5    *Biggest* was created by Reveille and 25/7 Productions against the backdrop of

6    the popularity of reality television elimination programs such as *Survivor*, *The*

7    *Apprentice*, *Big Brother* and *Fear Factor*; the growing popularity of self-

8    improvement/makeover programs; and the presence of weight loss and fitness shows

9    such as those discussed above.

10    Specifically, in 2003, Reveille's Ben Silverman, a successful producer of reality

11    television programming with special expertise in international reality television

12    formats, was considering shows based on weight loss; was well aware of *The Big Diet*

13    and *Fat Chance* series; had optioned *Fat Chance*; and had obtained written treatments

14    for both series. (SUF Nos. 2-11.)

15    In September 2003, 25/7 Production's Dave Broome separately came up the

16    idea of a weight loss television series after seeing a "trainer wanted" ad in his gym.

17    (SUF Nos. 12-14.) In October 2003, Broome first put his idea for the show on paper.

18    (SUF No. 16.) He wrote his first treatment in late November/early December (SUF

19    No. 16.) Finally, on January 8, 2004, Broome registered his treatment that he entitled

20    "The Biggest Loser" with the WGA. (SUF No. 17.) Silverman and Broome knew

21    each other  and when they learned they were both interested in developing a weight

22    loss program, they decided that Reveille and 25/7 would pitch their ideas jointly to

23    Jeff Gaspin, then Executive Vice President of Alternative Series, Longform, Specials

24    and Program Strategy at NBC. (SUF Nos. 18-22.) In mid-January 2004, Silverman,

25    Broome, Broome's agent John Ferriter, and Reveille's Mark Koops pitched Gaspin

26    both *Fat  Chance* and *The Big Diet* while attending the annual NATPE[7] conference in

27    ───────────────
[7]    NATPE is the National Association of Television Program Executives which

28    holds an annual conference at which television ideas are often pitched to networks.

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

1   Las Vegas. (SUF Nos. 22-24.) Gaspin's reaction was that he liked elements of both;

2   that it was an arena that others had pitched before, but he felt now was the right time

3   for such a show; that the show should be reconfigured as a two team competition; and

4   that it should be for prime time. (SUF No. 25.)

5   On February 23, 2004, Broome and Koops met in Silverman's office for hours

6   to do detailed work on the format for the show. At the conclusion of the working

7   session, Broome created a one page outline of the format elements for *Biggest*. (SUF

8   No. 27.) This process continued and on March 4, 2004, Koops sent NBC executives

9   Craig Plestis and Jayson Dinsmore a "series bible" for *Biggest*. (SUF N. 28.) This

10   "bible" incorporated the expressed collaboration between Silverman, Koops and

11   Broome, with no input from anyone else. (SUF Nos. 28-29.)

12   On or about March 18, Reveille received verbal notice that NBC was formally

13   ordering *Biggest* into production. (SUF No. 30.)

14   Shortly thereafter, in late March or early April 2004, 3 Ball was contacted and

15   later hired to be the "show runner" to physically produce and film the show in

16   conjunction with Reveille, 25/7 and NBC. (SUF Nos. 31, 36-38.) NBC announced the

17   show in a press release in May 2004. (SUF No. 42.) *Biggest* debuted in October 2004

18   and is now in its fifth season. (SUF No. 43.)[8]

19       **2.    Summary of *The Biggest Loser* Series**

20   In the first season of *Biggest*, there were 12 overweight contestants living

21   together in a ranch resort for a projected 12 weeks. (SUF Nos. 44, 134.)[9] The show

22   was presented by a female host, Caroline Rhea. The dieters were divided into two

23

24   [8]   Further details and documentation regarding the creation and development of
     *Biggest* are set forth in the SUF and supporting evidence. (SUF Nos. 1-44.)

25   [9]   The basic elements of *Biggest* appear in virtually every episode of the first season.
26   While each season has new contestants and twists, the gist of the series has not
     changed. (SUF 134, Expert Report, pages 6-8.) The NBC Defendants have provided
27   the Court with DVDs of the entire first season, plus the first and last episodes of
     seasons 2 through 4. (Compendium, Ex. 1.) Additional episodes can be provided if
28   requested.

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

teams. Each team was assigned its own fitness trainer who acted as both a dietician and an exercise coach. Each trainer had a somewhat different approach to diet, exercise, and psychological support (*e.g.*, one advocated an "eat more" (to feel full) regimen, while the other urged his team to "eat less"; neither used Weight Watchers). Occasional temptations to "cheat" were introduced (including glass-front refrigerators stocked with each competitor's favorite pre-competition foods). Product or service logos (*e.g.*, Subway and 24 Hour Fitness) were visible on-screen. (SUF No. 44.)

The dramatic core of the series was driven by the combination of competition (not just as to individual and aggregate weight loss itself, but also other periodic team "challenges" that resulted in tactical advantages or penalties between the teams) and regular weekly participant elimination (based upon factors determined by a vote by the team which cumulatively lost the lesser amount of weight each week). The team that lost the greater amount of weight each week typically received a small reward. The final reward was a $250,000 cash prize to the one contestant who ultimately lost the highest combined percentage of his or her body weight and body fat. As on other shows of this genre, the close contact under competitive pressure, but with naturally-conflicting tendencies both to support one's teammates but also to improve one's own individual chances of eventual success, led to displays of emotional highs and lows. (SUF No. 44.)

The contest started with a "baseline" weigh-in, body size measurement, and body fat calculation via a water displacement mechanism, all portrayed on an elaborate set with an elevated, oversize scale and numerical weight read-outs. At the end of each week, the contestants were re-weighed in the same on-screen ceremony. The team which lost less was obliged to "vote off" one member presumably thought to be the one least likely to be helpful to the team's success in the remaining weeks. As in other reality shows such as *The Apprentice*, *Survivor*, *American Idol* and *The Bachelor*, the end-of-episode assessment, vote result, and contestant elimination was

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

1    depicted as a formulaic ritual (including turning off the name-light on his or her

2    "temptation" refrigerator).  (SUF No. 44.)[10]

3          Importantly, with regard to each season and each episode, *Biggest* is a fully

4    realized television series with specific events, unique contestants, unscripted dialogue,

5    original challenges with detailed rules and unscripted emotional reactions to events

6    that unfold during the series.  These are conveyed to the audience by filmmaking

7    techniques and editing choices which result in concretely expressive and unique

8    stories.  (SUF No. 134, pp. 11-12.)

9    **D.   Plaintiff's "From Fat to Phat" Treatment**

10       **1.   The Creation of "From Fat to Phat"**

11         Plaintiff similarly created her idea for a weight loss television series in the

12   context of the numerous reality television competition, makeover and weight loss

13   programs populating the air waves.  In fact, plaintiff alleges that she came up with her

14   ideas in October and November 2003 (SAC ¶ 19), a few months after the premiere of

15   NBC's *Dateline Diet Challenge* and just a few weeks after the premiere of *Dr. Phil's*

16   *Weight Loss Challenge.*  (SUF No. 134, pp. 5, 6.)

17         Plaintiff testified that in October 2003, while employed by Twentieth, she

18   pitched an idea for a weight loss competition reality television series internally to her

19   immediate supervisor, Daniel Tibbets.  (SUF Nos. 45-49; SAC 19.)  Tibbets allegedly

20   liked the idea and suggested that she prepare a written treatment, which she did.

21   (SAC 19.)  Tibbets also suggested that plaintiff contact Andrew Hill, then of Shine, to

22   see if he would help plaintiff with her project.  Plaintiff worked with Hill and one of

23   his colleagues for a short while, revised her treatment, and submitted it to Twentieth,

24   which passed.  (SUF Nos. 50-55.)  Plaintiff left her employment at Twentieth in

25   [10]   Later seasons of *Biggest* introduced variations including:  teams organized as men
26   vs. women; one contestant from each state; a third team and trainer; contestants
     abandoned in the desert as an early "challenge", and team captains who chose their
27   team members. In another season, ten two-person teams competed against each other,
     with all of the pairs sharing some link: a mother and son; husband and wife; best
28   friends; brothers; and a divorced couple.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

1  February 2004.  (SUF No. 56.)  Plaintiff failed to register her treatment with the U.S.

2  Copyright Office until September 28, 2005, almost a year after *Biggest* first aired.

3  (SUF No. 59.)

4  　　　**2.　　Summary of Plaintiff's "From Fat to Phat" Treatment**

5  　　　Plaintiff created several similar versions of a short "treatment" entitled "From

6  Fat to Phat" or "Fat to Phat" ("Phat").[11]  Each was only three to five pages and

7  contained generic ideas for a proposed television reality show in which contestants

8  would compete to lose weight.  As the Court will see, the treatments contain little

9  more than vague general ideas and stock elements common to preexisting shows.

10  　　　In fact, plaintiff's treatment on its face borrows from pre-existing television

11  shows.  (SUF No. 61.)  The treatment summarizes plaintiff's proposed show as

12  follows:

13  　　　　Fat to Phat is 'The Real World' meets 'Richard Simmons' comprised of men

14  　　　　and women who are trying to shed from 40-100 pounds of weight by following

15  　　　　a specific diet and a healthy exercise program without the help of plastic

16  　　　　surgery.  (SUF No. 62.)  Fat to Phat is a new show about people and their

17  　　　　dreams.[12]

18  　　　Plaintiff's treatment also borrows:  the "slow-mo Baywatch style" jog down the

19  beach (SUF No. 63); a personal trainer that is "more like Simon [from American Idol]

20  than Richard Simmons" (SUF No. 63); and catching contestants "in their moments of

21  triumph and distress (ala 'Real Word' style)" (SUF No. 63).  The treatment further

22  states that the contestants will use "proven methods like the 'Weight Watchers' Point

23  

24  ─────────────
[11]　For purposes of this motion, the NBC Defendants assume that plaintiff created the
treatments alleged in the complaint, though, in deposition, she said she created only
25  portions of them.

26  [12]　*The Real World* is a reality television show broadcast on MTV since 1992 which
focuses on the lives of seven strangers picked to live in a house and work together and
27  have their lives taped.  (SUF No. 65.)  Richard Simmons is a health and fitness
celebrity from the 1980s who has had his own shows on weight loss and exercise.
28  (SUF No. 66.)

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   System' and the '7 Habits of Highly Successful People'" (SUF No. 67.)  Plaintiff's

2   treatment acknowledges that her proposed show is within the genre of makeover

3   shows, stating that "[w]e've made over our houses, our yards, our partners, our faces,

4   our clothes, our hair..." (SUF No. 68), and "[w]e've made over our stylish

5   appearances and our crib...it's now time to makeover our health and weight." (SUF No.

6   68.)

7         While plaintiff's treatment does not mention the preexisting weight loss shows

8   identified in Section II.B above, it contains the same standard ideas that those other

9   shows (and later shows) share -- contestants competing to lose weight with diet and

10  exercise, personal trainers, "before and after pictures," temptations, "rewards and

11  penalties," group dynamics, fitness challenges, weigh-ins and prizes for the winners.

12  Plaintiff has identified only such generic similarities in support of her claim, as set

13  forth in her response to interrogatory nos. 8 and 11 and SAC ¶ 36.[13]  As explained in

14  the legal argument below, such general similarities cannot support a copyright claim.[14]

19  ───────────────

    [13]   Plaintiff's response to interrogatory no. 11, in which she is asked to set forth all
20  similarities in her treatment and *Biggest*, identifies such generic elements as "a reality
    show format where two groups of overweight individuals are competing to see who
21  will lose the most weight," "a nutrition expert to teach the contestants about diet," a
    "personal trainer," a "vigorous exercise regime," "'before' pictures" displayed along
22  with the contestants' weight and body measurements," and "a weigh-in where the
    audience can track the weight loss."  Concurrently Filed Declaration of Melissa S.
23  Glousman in Support of Motion for Summary Judgment ("Glousman decl.") ¶ 10, Ex.
    O.

24  [14]   Moreover, the few "specifics" in plaintiff's treatment (still too general for
25  copyright protection) are not in *Biggest*.  "Phat" is set in an "ultra trendy" summer
    beach house; has a fitness supervisor called "Mr. Motivator"; employs the "Weight
26  Watcher's Point System"; suggests Kelly Clarkson, Jillian Barbieri and John Travolta
    as guest celebrities; has fictitious examples of several contestant archetypes (Ted is
27  too fat to be a firefighter, Julie whose husband left her because she got too fat, etc.);
    and ends with one male and one female winner "driving off into the sunset in
28  luxurious new convertibles."  None of these ideas appear in *Biggest*. (SUF No. 71.)

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

12

31419715_17

**E. The Creators of *The Biggest Loser* Did Not Copy From, See or Have Access to Plaintiff's Treatment**

There is no evidence that any of the NBC Defendants copied from, saw or even had access to plaintiff's treatment while creating *Biggest*.[15] (SUF Nos. 72-80.) In fact, plaintiff concedes that she did not pitch or submit her "Phat" treatment to any of the NBC Defendants and alleges that she disclosed it in confidence only to the Twentieth Defendants. (SAC ¶¶ 25-26; SUF 53, 72-80.).

The single allegation in the complaint purporting to connect plaintiff's treatment to the NBC Defendants is an incorrect assertion "on information and belief" that plaintiff's boss Tibbets had "a financial interest in 3 Ball Productions." (SAC ¶ 33). The deposition testimony of Tibbets and 3 Ball's owner, JD Roth, as well as 3 Ball's corporate records, however, demonstrate that Tibbets never had an ownership interest in, or any business relationship with, 3 Ball, and that Tibbets never even met anyone at 3 Ball until a chance encounter with Roth during the first quarter of 2007, long after plaintiff filed this lawsuit. (SUF Nos. 32-35; 93-96.) The evidence further establishes that 3 Ball first became involved in the creation of *Biggest* on March 29, 2004, at the earliest, well after the *Biggest* concept had already been independently created and pitched to NBC by Reveille and 25/7 Productions and, indeed, after NBC had already decided to go forward with the show. (SUF Nos. 31, 36-41.) As such, there is no evidence of a connection between Tibbets and 3 Ball before the creation of *Biggest*, much less that Tibbets transmitted plaintiff's treatment to 3 Ball or that 3 Ball somehow copied the treatment. Further, there is no evidence that Tibbets has ever had any involvement in the creation, development, production or distribution of *Biggest*. To the contrary, the only evidence is that he had no involvement of any kind. (SUF Nos. 80, 81, 95-97, 99-101.)

---

[15]   None of the NBC Defendants involved in the creation of *Biggest* had ever even heard of plaintiff or her treatment until after this lawsuit was filed. (SUF No. 72-79, 98.)

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    When plaintiff's prior counsel learned in discovery that there was, in fact, no

2 connection between Tibbets and 3 Ball, he dropped that theory, and instead suggested

3 that Hill might have transmitted the treatment to Reveille based on communications

4 between Hill and Reveille in late 2004. Those communications, however, concerned a

5 Miller Beer advertising campaign completely unrelated to *Biggest* and, moreover, took

6 place months after *Biggest* had already been publicly announced in a May 2004 press

7 release. (SUF Nos. 83-92.)[16]

8    Thus, plaintiff has no evidence of any link between "Phat" and *Biggest*.

9  **III. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS AS A**

10  **MATTER OF LAW**

11  **A.  To Prevail on a Claim of Copyright Infringement, a Plaintiff Must**

12  **Demonstrate "(1) ownership of a valid copyright, and (2) copying of**

13  **constituent elements of the work that are original."**

14    "A Plaintiff bringing a claim for copyright infringement must demonstrate

15 (1) ownership of the copyright, and (2) copying of constituent elements of a work that

16 are original." Funky Films, *supra*, 462 F. 3d at 1077. For this motion, defendants

17 assume plaintiff's ownership of "Phat." Under the second prong, absent direct

18 evidence of copying, proof of copying is shown by (a) "access to the copyrighted

19 work," and (b) "substantial similarity between the copyrighted work and the

20 defendant's work." Litchfield v. Spielberg, 736 F.2d 1352, 1355 (9th Cir. 1984).

21    Without evidence of access, the claim fails on summary judgment. Meta-Film,

22 *supra*, at 1355. Similarly, the Ninth Circuit has "frequently affirmed summary

23 judgment in favor of copyright defendants on the issue of substantial similarity."

24

25  _____

[16]  Plaintiff deposed both Andrew Hill and Ben Silverman (the former head of

26 Reveille), and each confirmed that: they had no communications prior to the Miller
beer matter; Hill never mentioned or transmitted plaintiff's "Phat" to Reveille; and

27 Hill never had any involvement in *Biggest*. Hill further testified that he did not
transmit any "Phat" ideas or treatments to any of the other NBC Defendants. (SUF

28 No. 84-89.)

**MOTION FOR SUMMARY JUDGMENT**

31419715_17

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   Funky Films, *supra*, 462 F. 3d at 1077 (series *Six Feet Under* not substantially similar

2   to plaintiffs' screenplay).

3        Even where a plaintiff proves access and substantial similarity, defendant's

4   proof that it independently created its work negates a claim of copyright infringement.

5   Benson v. Coca-Cola Co., 795 F. 2d 973, 974 (11th Cir. 1986); Stein v. Mazer, 204 F.

6   2d 472, 474 (4th Cir. 1953); Selle v. Gibb, 741 F. 2d 896, 901 (7th Cir. 1984) ("two

7   works may be identical in every detail, but, if the alleged infringer created the accused

8   work independently or both works were copied from a common source in the public

9   domain, then there is no infringement").

10        Thus, to survive summary judgment, plaintiff must raise a genuine issue of

11   material fact on access, similarity <u>and</u> independent creation.[17]  As explained below,

12   plaintiff does not raise a genuine issue on <u>any</u> of these required elements of her claim.

13   **B.   Plaintiff Does Not Raise A Genuine Issue of "Access" To Her Treatment**

14       **By Anyone Involved in the Creation of *The Biggest Loser*.**

15        Plaintiff bears the burden of proving by admissible evidence that the NBC

16   Defendants had access to her written copyrighted work. Meta-Film, *supra*, 586 F.

17   Supp. at 1355. Plaintiff must show that the NBC Defendants had a "reasonable

18   opportunity" for viewing plaintiff's work, not merely conjecture and speculation.

19   Three Boys Music v. Bolton, 212 F. 3d 477, 482 (9th Cir. 2000). "[A] bare

20   [17]   Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to

21   summary judgment if there is no genuine issue as to any material fact and the moving
     party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Generally, the

22   moving party has the burden of demonstrating the absence of a genuine issue of fact
     for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the

23   nonmoving party bears the burden of proof on an issue at trial, the "burden on the
     moving party [on a summary judgment motion] may be discharged by 'showing' –

24   that is, pointing out to the district court – that there is an absence of evidence to
     support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322,

25   106 S. Ct. 2548, 2552-53 (1986). The burden then shifts to the nonmoving party, who
     must do more than merely rely on the allegations of its pleadings. Id. "[T]he adverse

26   party's response . . . must set forth specific facts showing that there is a genuine issue
     for trial." Fed. R. Civ. P. 56(e). "[A] mere 'scintilla' of evidence will not be sufficient

27   to defeat a properly supported motion for summary judgment; rather, the nonmoving
     party must introduce some significant probative evidence tending to support the

28   complaint." Summers v. Teichert & Son, Inc., 127 F. 3d 1150, 1152 (9th Cir. 1997).

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1   possibility" of access is insufficient to avoid summary judgment on a copyright

2   infringement claim. Id.; Meta-Film, 586 F. Supp. at 1355.

3       Plaintiff did not pitch or submit her "Phat" treatment to any of the NBC

4   Defendants. (SUF 72-79.) As such, she must show by circumstantial evidence either:

5   (1) a particular chain of events between plaintiff's work and defendants' access to that

6   work; or (2) that her work has been "widely disseminated." Three Boys Music, 212 F.

7   3d at 482. Here, plaintiff's work was not widely disseminated (her work was

8   unpublished and disclosed in confidence only to the Twentieth Defendants), and she

9   has no evidence to support a "chain of events" theory, only conjecture and speculation

10  that is thoroughly refuted by defendants' evidence.

11      In written discovery, plaintiff was unable to articulate any evidence of access.[18]

12  Further, her two speculative theories of access -- that Daniel Tibbets allegedly had a

13  financial interest in 3 Ball and might have disclosed "Phat" to 3 Ball so he could

14  develop it with 3 Ball (SAC, ¶ 33); and that Andrew Hill might have disclosed Phat to

15  Reveille -- are without any evidentiary support, as set forth in Section II.E, above.

16      The facts of this case are analogous to those in many reported cases in which

17  courts have granted summary judgment. In Ferguson v. NBC, Inc., 584 F.2d 111, 113

18  (5th Cir. 1978), plaintiff composer claimed that conductor John Williams copied one

19  of his works where plaintiff showed he had sent BMI a copy of his work, and BMI

20  had subsequently had contacts with Williams, but there was no evidence that the

21  contact involved plaintiff's work. In Towler v. Sayles, 76 F. 3d 579, 582 (4th Cir.

22  1996), plaintiff alleged she sent a copy of her screenplay to an employee of a company

23  owned by writer-director John Sayles, and that the employee told plaintiff she would

24  forward the screenplay to Sayles, but there was no evidence the employee actually did

25

26  [18]  Interrogatory no. 4 asks: "State all facts which you contend show that NBCU,
    Reveille, Silverman, 25/7 and/or 3 Ball each had access to any treatment, idea, note,
27  script or other document which reflects or relates to Phat." Plaintiff responded:
    "Plaintiff contends that Daniel Tibbets and/or Andrew Hill provided F2P [Fat to Phat]
28  to NBCU, Reveille, 25/7 and/or 3 Ball." (SUF No. 80.)

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Katten
Katten Muchin Rosenman LLP

1   so.  In McGauhey v. Twentieth Century Fox Film Corp., 12 F. 3d 62, 65 (5th Cir.

2   1994), the court held that the production company could not have infringed author's

3   copyright in an unpublished novel, where the producer did not receive portions of the

4   novel until after the screenwriter had already written a script for the movie which

5   allegedly infringed the copyright.  In Meta-Film, supra, 586 F. Supp. at 1355, plaintiff

6   claimed he gave his script to director John Badham, who was under contract to

7   Universal Studios and had an office on the Universal lot.  Universal later released

8   *Animal House*, which plaintiff claimed infringed his script.  The court granted

9   summary judgment, as plaintiff produced no evidence that Badham had actually

10  shared the script with anyone at Universal.[19]

        As in Ferguson, Towler, McGauhey and Meta-Film, this Court should grant

12  summary judgment based on the utter lack of evidence of access.

13  **C.**   **Plaintiff Cannot Show that *The Biggest Loser* Television Series is**

14          **"Substantially Similar" to Her "Fat to Phat" Treatment.**

15          Even assuming, *arguendo*, that plaintiff could evade summary judgment by

16  producing evidence of reasonable access, plaintiff cannot possibly raise a genuine

17  issue of material fact that there is "substantial similarity between the copyrighted work

18  and the defendant's work."  Litchfield v. Spielberg, *supra*, 736 F.2d at 1355.[20]  A

19  comparison of the works reveals that the purported similarities are merely general

20  ideas, *scenes a faire* and/or unoriginal concepts from prior television programs that

21  are not protected by copyright law.

22

23  [19]   In Eaton v. National Broadcasting Co., the court held that submitting material to
    an intermediary who does not have creative control over an alleged copier does not
24  establish access, as "it is access by the creators of the allegedly infringing work [not
    by the studio] that must be shown."  972 F. Supp. 1019, 1024 n.7, 1025 n. 11 (E.D. Va
25  1997)(summary judgment for defendant); Tisi v. Patrick, 97 F. Supp. 2d 539, 547-548
    (S.D.N.Y. 2000)(same); Jason v. Fonda, 526 F. Supp. 774 (C.D. Cal. 1981).

26  [20]   "No amount of proof of access will suffice to show copying if there are no
    similarities."  Funky Films, *supra*, 462 F. 3d at 1081.  "Even if a defendant concedes
27  use [actual copying] of a plaintiff's work, the copyright claim still fails absent
    substantial similarity."  Zella, *supra*, 529 F. Supp. 2d at 1133 (citing cases).
28

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1. **Summary Judgment Is Required Where Two Works Are Not Substantially Similar Under The Ninth Circuit Extrinsic Test.**

The Ninth Circuit in <u>Funky Films</u> recently reiterated the test for determining substantial similarity on a motion for summary judgment involving literary works:

> [W]e have frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity.[21]
>
> At summary judgment, courts apply only the extrinsic test;....Extrinsic analysis is objective in nature.  It depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed. The extrinsic test focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works.  In applying the extrinsic test, this court "compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters."

<u>Funky Films</u>, *supra*, 462 F. 3d at 1076-77 (citations omitted); <u>Berkic</u>, *supra*, 761 F. 2d at 1293 ("extrinsic test for similarity of ideas looks beyond the vague, abstracted idea of a general plot and instead 'focuses on . . . the objective details of the works . . .'").

2. **When Comparing Works, the Court Must Filter Out General Plot Ideas, Stock Scenes (*Scenes a Faire*) and Unoriginal Elements in the Genre.**

The Ninth Circuit has repeatedly held that only protected expression may be considered in evaluating substantial similarity.  Generic ideas, plot lines and *scenes a faire*, "which flow naturally from generic plot-lines, are not protectable" under

---

[21]   <u>Narell v. Freeman</u>, 872 F. 2d 907, 910 (9th Cir. 1989) (Ninth Circuit courts applying the extrinsic test "frequently have affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity").

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31419715_17

copyright law; the court must "filter out and disregard the non-protectable elements in making its substantial similarity determination." <u>Funky Films</u>, *supra*, 462 F. 3d at 1077 (citation omitted).[22]  See also, <u>Apple Computer Inc. v. Microsoft Corp.</u>, 35 F. 3d 1435, 1442-43, 1446 (9th Cir. 1994) (court must employ "analytic dissection," a "successive filtering method" that eliminates from consideration those elements that are not protected by copyright).[23]

Courts viewing plot ideas far more developed than those in plaintiff's treatment have refused to provide any protection for those ideas.  See <u>Funky Films</u>, *supra*, 462 F. 3d at 1081 (plot ideas of "[a] family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the business"); <u>Kouf v. Walt Disney Pictures & Television</u>, 16 F. 3d 1042, 1044-45 (9th Cir. 1994)("general plot idea" of life struggle of shrunken kids fighting insurmountable dangers); <u>Berkic</u>, *supra*, 761 F. 2d at 1293 (plot ideas of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy

---

[22]  "Among the unprotectible elements which the court must filter out of its comparison of a copyrighted work and an allegedly infringing work are: 'ideas,' as distinguished from 'expression' of those ideas; facts, historical events, or other information over which no individual is entitled to claim a monopoly...; elements borrowed from other authors or from the 'public domain'; instances in which a particular expression at issue 'merges' with the 'idea' being expressed; and /or a similar instance in which the form of the 'expression' is so 'standard' in the treatment of a given 'idea' that it constitutes *scenes a faire*, or a 'scene which must be done'." <u>Bethea</u>, *supra*, 2005 WL 1720631, at *11,  quoting <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001).

[23]  "The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas'." <u>Feist Pubs., Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 344-45 (1991); 17 U.S.C. § 102(b); <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 823 (9th Cir. 2002) ("Copyright law only protects expression of ideas, not the ideas themselves"); <u>Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.</u>, 109 F3d 1394, 1398 (9th Cir. 1997) ("'substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts").  In fact, copyright law *encourages* copying of ideas, as it results in a richer body of creative works, as evidenced by the plethora of reality television programs, such as: dating eliminations (*The Bachelor*, *The Bachelorette*, *Average Joe*, *Beauty and the Geek*); personal makeover shows with surgery (*The Swan*, *Dr. 90210*, and *Miami Slice*); and many others such as the weight loss programs identified above.  (SUF Nos. 105-128.)

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   people in need of organ transplants" and "a young professional who courageously

2   investigates, and finally exposes, the criminal organization" – not protected).

3         This principle has recently been applied in this district to unscripted "reality"

4   television programs.  For example, in <u>Bethea v. Burnett</u>, plaintiff alleged that the

5   popular series *The Apprentice* infringed plaintiff's work.  The court held that the

6   following shared program ideas could not form the basis of a claim for copyright

7   infringement: "depict[ing] a group of dynamic contestants from varied backgrounds

8   competing in business challenges in a dynamic corporate environment for promotions

9   and benefits and, ultimately, a real job as a top-level executive of a corporation."

10  2005 WL 1720631, at *11.  Rather, these ideas were "nothing more than a string of

11  generic 'ideas' which . . . [are] not protected by copyright law."  <u>Id</u>.  Similarly, a few

12  month ago, in <u>Zella</u>, *supra*, 529 F. Supp. 2d at 1133, the court granted a motion to

13  dismiss a copyright claim against producers of the television series *Rachael Ray* on

14  grounds that generic elements such as a host cooking with and interviewing guest

15  celebrities are unprotected general plot ideas, and thus the plaintiff's proposed

16  celebrity cooking show did not support a claim.  See also <u>Woods v. Pro Video</u>

17  <u>Productions, Inc.</u>, 447 F. Supp. 2d 1022, 1034 (D. Minn. 2006) ("idea of basing [a]

18  video on interviews with members of the aviation community, such as pilots,

19  passengers, and air traffic controllers, is too broad and unoriginal to be protected");

20  <u>Novak v. NBC, Inc.</u>, 752 F. Supp. 164, 172 (S.D.N.Y. 1990) (interview/talk show

21  format is a generalized element not protected by copyright).

22        Courts must also filter out situations and incidents which flow naturally from a

23  basic plot premise, so-called *scenes a faire*.  <u>Rice v. Fox Broadcasting Co.</u>, 330 F. 3d

24  1170, 1177 (9th Cir. 2003) (explaining that there are "only a finite number of ways to

25  reveal the secrets behind magic tricks, and the "perform and reveal" sequence is the

26  most logical 'expression' of this idea," thus rendering the perform and reveal

27

28

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

20

**MOTION FOR SUMMARY JUDGMENT**

1   sequence unprotectable *scenes a faire*).[24]   In <u>Bethea</u>, the court found that any

2   similarity between the use of a boardroom in plaintiff's treatment and *The Apprentice*

3   were a classic example of *scenes a faire* of any television program set in a corporate

4   environment. <u>Bethea</u>, *supra*, 2005 WL 1720631, at *13.  In <u>Zella</u>, the court found that

5   "the stock elements of a host, guest celebrities, an interview, and a cooking segment

6   can also be characterized as unprotected *scenes a faire*, or 'situations and incidents

7   which flow naturally from [the] basic plot premise' of a cooking and home related talk

8   show."  529 F. Supp. 2d at 1134.

9        A further limitation on copyright claims is that "an author may claim protection

10   only in those elements of a copyrighted work which are *original* with that author; no

11   protection may adhere in facts, ideas, scenes, characters, themes, or other elements

12   borrowed from another author, from the 'public domain,' or which are otherwise not a

13   plaintiff's original expression."  <u>Rice v. Fox Broadcasting Co.</u>, 148 F. Supp. 2d 1029,

14   1052 (C.D. Cal. 2001), affirmed as to copyright claim, 330 F.3d 1170 (9th Cir. 2003).

15   Thus, in <u>Bethea</u>, the court held that unoriginal elements — such as "a group of

16   dynamic contestants from varied backgrounds" who are "living together in an

17   artificial environment" as the plaintiff "had seen done on *Big Brother*, *Survivor* and

18   *The Real World*" — are "unprotected 'staples' of the reality television genre" that do

19   not receive copyright protection.  2005 WL 1720631, at * 12, 14.  Similarly, in <u>Dick</u>

20   <u>Clark Co. v. Alan Landsburg Productions, Inc.</u>, 1985 WL 1077775, at *1, *3 (C.D.

21   Cal. 1985), the Central District ruled that a show featuring a host, a studio audience,

---

24   See v. Durang, 711 F. 2d 141, 143 (9th Cir. 1983) ("stock scenes or scenes that [flow] necessarily from common unprotectible ideas" are not protected by copyright); Olson v. NBC, 855 F.2d 1446, 1450 n.3, 1451 (9th Cir. 1988) (television show was similar to plaintiff's work "in terms of theme, mood, and pace," but "these similarities are common to the genre of action-adventure television series and movies and therefore do not demonstrate substantial similarity"); Berkic, *supra*, 761 F. 2d at 1293 ("depictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other," are common themes in "modern American literature and film," and are unprotected); Williams v. Crichton, 84 F.3d 581, 589 (9th Cir. 1996) ("the common elements of electrified fences, automated tours, dinosaur nurseries, and uniformed workers were scenes-a-faire that flowed from a dinosaur zoo").

MOTION FOR SUMMARY JUDGMENT

31419715_17

1  studio guests, and the host showing "blooper" outtakes on a large screen while adding
2  commentary was an unprotected, further explaining that "[t]he formats of the two
3  shows look similar, but so do the formats of virtually every television news show.
4  The 'look' of a show is not the proper subject of copyright protection. The scope of
5  copyright protection was never intended to go this far."[25]

6  **3.  Plaintiff Has Failed to Identify *Any* Protectible Similarities Between**
7  **her Treatment and *The Biggest Loser*.**

8  Plaintiff alleges similarities that are merely general plot ideas, *scenes a faire*
9  and/or unoriginal concepts from the genre that are not protected by copyright law. In
10  sum, plaintiff alleges that "Phat" and *Biggest* are both reality television series where
11  two groups of overweight individuals compete to see who will lose the most weight.
12  Plaintiff lists as similarities the most basic *scenes a faire* and stock elements of a
13  weight loss competition (which are present in all of the prior programs described
14  above): diet, vigorous exercise, a trainer, "before and after" photos, willpower,
15  rewards and weigh-ins. Plaintiff also relies on stock ideas from the reality television
16  genre, *i.e.*, contestants living together during the competition and the emotional bonds
17  and tensions between members of the group, which her treatment acknowledges are
18  borrowed from prior programs (*e.g.*, the reference to *The Real World*) and which the
19  court in Bethea stated are "staples of the genre." Bethea, *supra*, 2005 WL 1720631, at
20  *15.[26] None of these alleged similarities are protected by copyright law. As such,
21  they must be filtered out and cannot form the basis of a copyright claim.

22

23  [25]  Also, the doctrine of "merger" precludes copyright protection for elements
   expressed in the standard form of a particular type of show. Zella, 529 F. Supp. 2d at
24  1135. "Merger" describes when an idea and its expression are indistinguishable such
   that they can be said to have "merged." Apple Computer, Inc. v. Microsoft Corp.,
25  *supra*, at 1444. Absent identical copying, there is no copyright protection when an
   idea and its expression merge. Id.; see also, Data East USA, Inc. v. Epyx, Inc., 862
26  F.2d 204, 208 (9th Cir. 1988).

27  [26]  See also, Zella, *supra*, 529 F. Supp. 2d at 1139 ("similarities derived from use of
   common ideas cannot be protected; otherwise, the first to come with an idea will
28  corner the market," quoting Apple, *supra*, 35 F.3d 1435, 1443).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    In short, plaintiff's treatment is a bare-bones outline of ideas which was never

2    developed into protectible expression. Unlike *Biggest*, "Phat" has no dialogue, no

3    developed characters/contestants,[27] no unique mood,[28] no specific story, no concrete

4    plot, no pace and no sequence of events. Once the unprotected elements are filtered

5    out from plaintiff's list of alleged similarities, there is literally no comparison left to

6    make.

7    To the extent plaintiff's treatment contains any specifics at all, they are different

8    from *Biggest*. For example, while contestants in both shows live in a big house,

9    "Phat" takes place in an "ultra trendy" beach setting, whereas *Biggest* has a ranch

10   setting; while both works use diets, "Phat" refers to the Weight Watcher's diet plan

11   and point system, whereas in *Biggest* the diet programs are set by the trainers; while

12   both works have trainers, "Phat" proposes celebrity trainers, whereas the trainers in

13   *Biggest* were unknown at the start of the show; while both works award a prize to the

14   winner of the competition, in "Phat" a male and female winner each ride off into the

15   sunset in convertibles, whereas in *Biggest* a single winner is awarded a cash prize.

16   (SUF __). Thus, beyond the basic concept of a reality television weight loss

17   competition, the two works are not the same.[29] As in <u>Bethea</u> and <u>Zella</u>, plaintiff has

18   "simply failed to provide the Court with any evidence of a specific expression of an

19   idea which is similar" in both works. <u>Bethea</u>, *supra*, 2005 WL 1720631, at *13.

20

21

22   [27] Plaintiff's contestant archetypes do not merit copyright protection. <u>Hogan v. DC
     Comics</u>, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999); <u>Zella</u>, *supra*, 529 F. Supp. 2d at
23   1134.

24   [28] A general mood which flows naturally from the basic premise of a program is
     *scenes a faire*, and thus cannot give rise to a copyright claim. *See, e.g.*, <u>Rice</u>, 330 F.3d
25   at 1177 (overall mood of secrecy and mystery arose from the basic plot idea of a show
     about revealing magic tricks, and therefore were unprotectable); <u>Olson</u>, *supra*, 855
26   F.2d at 1451 (a comic mood is standard to the action-adventure television series genre,
     and therefore cannot give rise to a copyright infringement claim).

27   [29] Further, a court may not find substantially similarity based on a "compilation of
28   'random similarities' scattered throughout the works." <u>Rice</u>, *supra*, 330 F. 3d at 1179.

**MOTION FOR SUMMARY JUDGMENT**

1
2
3

**D.   The NBC Defendants Have Produced Uncontroverted Evidence Showing**
**That _The Biggest Loser_ Was Independently Created, Without Reference to**
**Plaintiff's "Phat" Treatment.**

4    Even were the Court to find a genuine issue as to substantial similarity and

5    access, the NBC Defendants are still entitled to summary judgment because they have

6    provided irrefutable evidence that _Biggest_ was independently created without

7    reference to plaintiff's work. Benson, _supra_, 795 F. 2d at 975 (uncontradicted

8    evidence of independent creation "fully negat[es] any copyright infringement"); Three

9    Boys Music, 212 F. 3d at 486. "[T]wo works may be identical in every detail, but, if

10   the alleged infringer created the accused work independently or both works were

11   copied from a common source in the public domain, then there is no infringement."

12   Stein v. Mazer, _supra_, at 474. It is both possible and permissible "to have a plurality

13   of valid copyrights directed to closely or even identical works," none of which would

14   infringe another's copyright "if independently arrived at without copying." Selle v.

15   Gibb, _supra_, at 901.

16   In Bethea, the defendant provided the testimony of the persons involved in the

17   conception of the idea for _The Apprentice_. The plaintiff offered no evidence

18   contradicting that testimony. As a result, the court ruled that "assuming the Court had

19   found sufficient evidence of access and substantial similarity to survive summary

20   judgment, Defendants would nevertheless be entitled to summary judgment on the

21   basis of independent creation." Bethea, _supra_, 2005 WL 1720631, at *16.

22   The NBC Defendants have provided detailed, corroborated and specific

23   evidence of independent creation, both testimony and supporting documentation. Like

24   the evidence presented in Bethea, defendants' evidence establishes that the NBC

25   Defendants independently arrived at the idea for _Biggest_ and independently developed

26   the concept, with no reference to the plaintiff or her work. Plaintiff has no evidence

27   (and cannot possibly have any evidence) to rebut the NBC Defendants' showing of

28   independent creation.

24

31419715_17

1  **E.  Plaintiffs' Failure To Timely Register Her Work Precludes Her From**

2  **Seeking Statutory Damages Or Attorney's Fees.**

3  Milano failed to register her work with the U.S. Copyright Office until almost a

4  year after *Biggest* aired on the NBC television network.  (SUF No. 59.)  Thus, she

5  cannot recover statutory damages or attorney's fees under the Copyright Act, 17

6  U.S.C. § 412, whether or not the alleged infringement continued after registration.

7  Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc., 64 F. Supp. 2d 352, 353 (S.D. NY

8  1999).

9  **IV.   CONCLUSION**

10  For the reasons stated above, the Court should grant summary judgment for the

11  NBC Defendants on plaintiff's claim for copyright infringement.  This case is

12  frivolous:  there is no evidence of access; no substantial similarity of protected

13  expression; and irrefutable evidence of independent creation.

14  Dated:  May 14, 2008                    **KATTEN MUCHIN ROSENMAN LLP**

15

16                                    By:

17                                        Joel R. Weiner
                                          Attorneys for Defendants NBC
18                                        UNIVERSAL, INC.; 3 BALL
                                          PRODUCTIONS, INC.; REVEILLE,
19                                        LLC; BEN SILVERMAN and Reveille
                                          PRODUCTIONS, LLP

20

21

22

23

24

25

26

27

28

**MOTION FOR SUMMARY JUDGMENT**

31419715_17